# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| THOMAS BUTLER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-4135-CV-C-NKL-P |
| ALAN EARLS, et al., | ) ) ) |
| Defendants. | ) |

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS

Plaintiff, who currently is confined at the Tipton Correctional Center ("TCC") in Tipton, Missouri, has filed *pro se* this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights. Currently pending before this Court are Defendants' motion to dismiss (Doc. 8), and Plaintiff's response thereto (Doc. 11). For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.

### Standard

When considering a defendant's motion to dismiss, the Court must liberally construe the complaint in favor of the plaintiff, accepting material allegations of fact in the complaint as true, unless those allegations are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic*, 550 U.S. at 570). A claim is plausible when the facts asserted by the plaintiff "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic*, 550 U.S. at 556). Dismissal of an action is warranted if the "allegations of constitutional violations are unsupported by sufficient facts to identify the

nature of [the] alleged injury." *Yancey v. Alexander*, 724 F.2d 93, 94 (8th Cir. 1983).

**Background**

Plaintiff's complaint sets forth the following allegations. On November 1, 2016, Defendant Falkenrath ordered Plaintiff and all other inmates assigned to Housing Unit 16 at TCC to move to the gym so that correctional officers could conduct a search of the entire housing unit. Doc. 1, p. 5. Approximately two hours later, Defendant Falkenrath ordered that all inmates of Housing Unit 16 be given visual body cavity ("VBC") searches. *Id.* Plaintiff and the other inmates were moved into a small shed in groups of five, where they were met by five correctional officers, including Defendant Morrow. *Id.* at 5-6. The inmates were told to strip out of their clothes and hand them to the officer in front of them. *Id.* at 5. The officers informed the inmates that the orders came from Defendant Falkenrath and that anyone who did not comply would be sent to the Disciplinary Housing Unit. *Id*. Officers then gave directives to the inmates, saying, "Lift your penis and separate it from your testicles . . . Turn around, bend over at your waist, take your hands and spread your butt-cheeks." *Id.* Some of the officers instructed some of the inmates to repeat the last directive two or three times. *Id.*

The inmates were moved to the dining area for lunch immediately after the searches were conducted. *Id.* On the way to the dining area, inmates asked Defendants Falkenrath and Ramey to be allowed to wash their hands before eating after "just having had to touch [their] private parts." *Id.* Defendants Falkenrath and Ramey both denied the request. *Id.*

The searches were said to have been conducted to find contraband, but Plaintiff alleges that "there are multiple locations throughout the prison's grounds where these searches could have been conducted (searching multiple inmates at once) without violating the inmates['] rights, inmates could have been taken separately to separate locations." *Id.* Plaintiff filed a grievance requesting that these searches be stopped. *Id.* at 6. Plaintiff's grievance was denied by Defendant Prudden. *Id.* Defendant Earls denied Plaintiff's grievance appeal, stating, "These searches will continue as deemed necessary by the Chief of Custody." *Id.* The group VBC searches continue at TCC. *Id.* at 5.

2

Plaintiff claims that Defendants' actions violated his rights under the Fourth Amendment to the United States Constitution. *Id*. at 6.

## Discussion

In support of their motion to dismiss, Defendants argue, *inter alia*, that (1) Defendants are entitled to Eleventh Amendment immunity as to Plaintiff's claims for monetary damages against Defendants in their official capacities; (2) Plaintiff has not alleged sufficient personal involvement of Defendants Earls, Prudden, or Ramey in the alleged violation of his constitutional rights; and (3) Defendants are entitled to qualified immunity as to Plaintiff's claims against Defendants in their individual capacities. Doc. 8. This Court addresses each argument below.

### I. The Eleventh Amendment bars Plaintiff's claim for monetary damages against Defendants in their official capacities.

When Plaintiff sues Defendants for monetary damages in their official capacities, he is attempting to recover damages from the government body itself, in this case the State of Missouri. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Neither the State nor its officials acting in their official capacities are 'persons' capable of being sued under 42 U.S.C. § 1983." *Mayorga v. Missouri*, 442 F.3d 1128, 1130-31 n. 2, (8th Cir. 2006) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, because Defendants in their official capacities are not "persons" acting under color of state law within the meaning of § 1983 and are otherwise immune from suit, Plaintiff's claims for monetary damages against Defendants in their official capacities must be dismissed.

### II. Defendants fail to establish that they are entitled to qualified immunity at this time.

To prevail on their motion to dismiss as to Plaintiff's claims against Defendants in their individual capacities, Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee,* 394 F.3d 1012, 1015 (8th Cir. 2005). Government officials are entitled to qualified immunity if they prove their conduct did "not violate clearly

3

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court uses a two-part test to determine whether a government official is entitled to qualified immunity. *See Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014). The first part of this test is to determine "whether the facts alleged, construed in the light most favorable to [Plaintiff], established a violation of a constitutional or statutory rights." *Id*. The second part of this test is to determine "whether that right was clearly established at the time of the alleged violation, such that a reasonable officer would have known his actions were unlawful." *Id*.

### a. *Defendants fail to satisfy the first prong of qualified immunity.*

#### 1. Fourth Amendment Search

As to the first prong of qualified immunity, "[t]he test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (applying Fourth Amendment reasonableness standard to prison strip search). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*.

Reasonable VBC search policies (even those that involve searches conducted in groups) may be permitted as a means to deter and detect the possession of contraband in correctional facilities. *See id.*; *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012); *Goff v. Nix*, 803 F.2d 358 (8th Cir. 1986). Corrections officials, however, may not conduct these searches in a manner that constitutes an "exaggerated . . . response to the perceived security concerns." *Franklin v. Lockhart*, 883 F.2d 654, 657 (8th Cir. 1989) (quoting *Goff*, 803 F.2d at 363-63). "[S]trip searches should be performed in a hygienic fashion and not in a degrading, humiliating, or abusive fashion." *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007). Less public means of conducting prison searches may be necessary when those means would not compromise security concerns.

4

*Franklin,* 883 F.2d at 656-57 (discussing prison officials' testimony that more private alternatives to group searches presented security risks); *see also Story v. Foote*, 782 F.3d 968, 972 (8th Cir. 2015) (in affirming the denial of relief, emphasizing that inmate did not allege that a more private, yet equally secure and cost-effective means of conducting the body-cavity inspection was readily available to the officers); *Fernandez v. Rapone*, 926 F. Supp. 255 (D. Mass. 1996) (finding group searches were not unreasonable when it was the policy and practice at the institution for an officer to comply with an inmate's request to be searched alone). Some district courts have found that a blanket policy of strip searching detainees in groups violates the Fourth Amendment. *See, e.g., Lopez v. Youngblood*, 609 F. Supp. 2d 1125, 1136 (E.D. Cal. 2009) ("Although Defendants have made general assertions regarding limited space and limited staffing as precluding individualized searches, Defendants made no apparent efforts to conduct individualized searches or to preserve the privacy of the individuals during searches.").

After liberally construing Plaintiff's complaint, accepting Plaintiff's allegations of fact as true, and considering the case law set forth above, this Court finds that Plaintiff has alleged the violation of a constitutional right. Rather than challenge the VBC searches generally, Plaintiff alleges that there were multiple locations where the VBC searches could have been conducted in a less intrusive manner. Doc. 11, p. 2; Doc. 1, p. 5. Specifically, Plaintiff claims that the searches could have taken place in "the six shower stalls in the housing units – on each side of the housing unit – where the inmates were before being herded to the gymnasium." Doc. 11, p. 2. Moreover, Plaintiff alleges that the searches were conducted in a humiliating and unhygienic manner, in that the inmates were forced to touch their genitals and buttocks multiple times and then were prevented from washing their hands before eating lunch. Doc. 1, pp. 5-6.

Notably, no evidence setting forth the VBC search's rationale and implementation yet exists in this case. Such information is relevant in assessing whether the VBC search policy is reasonable and, ultimately, constitutional. As such, granting Defendants' motion to dismiss would be

5

premature. In light of Plaintiff's allegations and because the record currently is undeveloped as to the rationale and implementation of the challenged search, this Court finds that Plaintiff has stated a claim under the Fourth Amendment.

### 2. *Personal Involvement*

Insofar as Defendants argue that Plaintiff has not alleged sufficient personal involvement on behalf of Defendants Earls, Prudden, or Ramey, "[l]iability under [42 U.S.C.] § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). "A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). "The standard of liability for failure to train is deliberate indifference . . . the standard of liability for failure to supervise is demonstrated deliberate indifference or tacit authorization of the offensive acts." *Id.* (alteration added, internal quotation omitted). Prison supervisors may be held liable under a deliberate indifference standard if they are aware that a prisoner's constitutional rights are being violated but fail to take proper corrective action. *See Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002) (a supervisor is liable for an Eighth Amendment violation "when the supervisor's corrective inaction constitutes deliberate indifference").

After liberally construing Plaintiff's complaint and accepting Plaintiff's allegations of fact as true, Plaintiff has alleged sufficient personal involvement on behalf of Defendants Earls, Prudden, and Ramey in his federal claims. Plaintiff alleges that Defendants Prudden and Earls indicated in their response to his grievances that they are aware of the VBC searches being conducted at TCC. Doc. 1, pp. 5-6. Plaintiff further alleges that Defendants Prudden and Earls have failed to take corrective action regarding his grievances. *Id.* at 6. Instead, Defendant Earls explained to Plaintiff that the "searches will continue as deemed necessary by the Chief of Custody." *Id.* Furthermore,

6

Plaintiff alleges that Defendant Ramey was involved in ordering and overseeing the searches and did not allow Plaintiff to wash his hands following the search. *Id*. at 5-6. Therefore, this Court finds that, under a liberal construction of Plaintiff's allegations, Plaintiff sufficiently has alleged that Defendants Earls, Prudden, and Ramey were aware of the VBC searches, know that the VBC searches are continuing, and have failed to take corrective action. Consequently, Plaintiff has alleged sufficient personal involvement on behalf of Defendants Earls, Prudden, and Ramey to constitute liability under § 1983, and Defendants fail to establish the first prong of qualified immunity at this time.

### *b. Defendants fail to satisfy the second prong of qualified immunity at this time.*

As to the second prong of qualified immunity, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (8th Cir. 2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (internal citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation and alterations omitted).

After accepting Plaintiff's allegations of fact as true and in light of the pre-existing law set forth in the foregoing sections, this Court finds that a reasonable official would have understood that conducting recurring group VBC searches when less public, equally safe, more hygienic, and less humiliating means are available violates an inmate's constitutional rights under the Fourth Amendment. *See, e.g., Franklin*, 883 F.2d 654; *Story*, 782 F.3d 968; *see also Richmond* 490 F.3d at 1008 ("the law in April 2001 was clear that strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns." (citing *Franklin*,

883 F.2d at 656-57)).  Consequently, Defendants fail to establish that they are entitled to qualified immunity as this time.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. 8) is granted as to Plaintiff's claims for monetary damages against Defendants in their official capacities but denied in all other respects.

**It is so ORDERED.**

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
UNITED STATES DISTRICT JUDGE

Dated: October 27, 2017.